The next case is No. 09-1482, the first of the two appeals captioned In Re. William Knaus and Richard Marks. Mr. Marks. May it please the Court. The claims in this case extend to a patient-based system for electronic medical records. It is a different regime entirely from the traditional kind of medical records that are controlled by doctors, hospitals and other medical institutions. There is obviously a great interest in health care. But now Snowden had already given us a patient-based system. Yes, Your Honor, it does. So how do you distinguish over the prior article? The problem with the system in Snowden is that there is no way for clinicians to trust the medical information in the record because the medical information is under the domain and control of patients. Patients, either through inadvertence or for deliberate reasons, may alter the information. So the records in Snowden don't have usefulness for the clinicians. They can't be trusted and their diminished utility is apparent. But then, of course, we've got Shepard that has a non-repudiation feature that we combine with Snowden. You still haven't told us how we get past obviousness. Your Honor, the features in Shepard where a doctor examines a patient, there is a scribe there to record the doctor's observations, and the doctor later checks the recording that the scribe makes, is a checking feature, but it is not certification and it is not non-repudiation and does not have the objective reach of the Knapp's invention. The reason for that is a functional reason. It in fact relates to the fact that the examiner and the board did not perform the required analysis under Graham and KSR and did not look at the fact that if you use the checking procedures in Shepard, they can't possibly apply to a record that the patient owns and controls. That's why they relied on the combination of both of those records. So you take Snowden and you take Shepard. So I guess I'm a little unclear on what you say is left. Is it exclusively the vetting aspect of this, the certification and the vetting? No, Your Honor. It's that the combination of the two pieces of prior art, Shepard and Snowden, cannot properly be combined under the Graham test under KSR because an ordinary artisan in the field would understand that the Shepard functions where a doctor checks the record don't work when the doctor isn't there, the scribe isn't there, and the record is in an entirely different place but that the patient controls. It just doesn't work. It's a functional test and in fact it's one of the secondary considerations that it is... But if you combine that with the patient system of Snowden, what's missing? What's missing is the functionality, Your Honor. The Shepard system does not take the additional steps of certifying. It doesn't take the additional steps that lead to non-repudiation and basically... Well, that's what I thought I was asking before. So the only missing element that you're arguing about between Shepard and Snowden is this vetting aspect or the certification aspect. Am I wrong about that? Well, no, Your Honor. Yes, you are wrong about that. And let's divide this into two points. Vetting in Shepard doesn't work in combination with Snowden. And a knowledgeable artisan in the medical record arts would not combine them because you need a doctor there or another medical professional who's conducted the examination to look at whatever changes are made, whatever alteration is made, inputs to the medical record that the patient controls. It just functionally doesn't work. Consequently, when you look at the kind of vetting that is in the Knauss invention, it's entirely different from the... It has a different objective reach and... What is different about it? What's different is that the doctor is not in control where the hospital, the medical institution, the medical professional source site, the institutional custodian of the record is not there to use the data quality controls that hospitals and doctors' offices traditionally use and because... If a record is as good or better as it was at the point of origination, is it, in your opinion, fit into this non-refudiation category? If it's good or better, Your Honor... Then at the point of origination. Then at the point of origination, then what it is, is a compiled record from more than one source where inconsistencies, anomalies are noted. I'm trying to... I don't think you answered my question. I'm trying to figure out if a record that's as good after going through the process of being entered and checked is as good as it was when it was created. Is it subject to... Is it, in your opinion, non-refudiated? No, Your Honor. It's not because the steps of certification and non-refudiation are additional discrete steps. They're claimed as additional discrete steps. But the purpose of those steps is to make sure the record is as good as when it was created, right? Actually, if it is a record that's compiled from many sources, the purpose of those steps is to identify inconsistencies, anomalies. For example, Your Honor, there may be in a particular... You realize, of course, that's what Shepard does. Shepard makes sure it's just as good as at the point of creation, and I'm not sure why that isn't sufficient. It's because Shepard's steps of having a doctor, a medical professional... Look at what the writer put down and check if it's okay. Right. That step is useless. That whole quality control system is useless once the record is in hands under the dominion of the patient. The patient may enter data erroneously through an advertence, may change the data deliberately because the patient doesn't want something in the record that the doctor put in. And so you have this long-felt need that you see in the materials that we presented, particularly from Dr. Sindor, that say that when you have a patient-controlled owned record, where the patient has dominion over the record, doctors won't use it because they can't be sure that it has sufficient quality control of the information so that they won't commit malpractice by using the record. By the way, the definition of non-repudiation that I gave is the one that you find in the patent application, isn't it? It's as good or better than what exists at the point of creation. That's exactly what the spec says, isn't it? The spec says that the record is as good or better, but respectfully, Your Honor, I think the specification says that there is an additional step of making a warranty or a guarantee, and it is that additional step that creates non-repudiation. It's not the fact that the record was vetted, although as you can see from looking at figure 8, for example, there's a long series of steps that leads to vetting. But after vetting, there's an additional step where the service provider, that is the... Can you point to that requirement in the patent application? I've got it here. Certainly, Your Honor, I think if you look at figure 8, which is in A67, you'll see vetting. And if you look at claims 18, 19, and 20, I think, and I'll get them in front of me if I need to do that, and point to you directly in the record, that's A492. You'll see that there are corrections. Claim 20 deals with better than the source site and thereby not subject to non-repudiation. But it's only after all of these steps where you're looking at... What did you just read from? Claim 19? Yes, Your Honor. Claims 19 and 20 are examples, but they're not the only examples. And what the specification makes clear is that, in order to get to certification and then to non-repudiation, there need to be additional steps. They're not simply the result of checking in the preferred embodiment that we described in the specification. The service provider would go through those steps. The record would have been vetted. If there are inputs from many doctors, inconsistencies would be denoted. They don't talk about compiling data from multiple sources, do they? Say again, Your Honor? The claims don't talk about compiling data from multiple sources, do they? No, I believe they do, Your Honor. I'll have to find that. But, yes, they do. Look at Claim 10 on page 491, Your Honor, where the medical information of each medical record have said one or more non-repudiated medical records as primary for treatment. Of course, the whole point of compiling records from more than one source, which is described in that claim and in others and also in the specification. But that's not in your broadest claim. Is that right? Your broadest claim doesn't include that restriction. Well, Your Honor, Claim 10 is part of Claim 1, which I suppose is a broad claim. I don't know if I would try to compare which of the independent claims that we're dealing with is broader than the other, but Claim 10 is part of Claim 1, so yes. Well, but we have Claim 1 before us as well. Claim 1 is on appeal. Yes, Claim 1 is before you. All of the claims are before you. And the... The reason I ask is that it seems that you're arguing limitations, which may appear in some claims but not others, but I haven't observed that disclaimer of the breadth of your broader claims. Well, Your Honor, we haven't disclaimed the breadth of the broader claims because we don't think there's anything in the broader claims that is affected by Shepard or Snowden because Shepard's functions, again, to answer Judge Rader's question and repeat that, don't work in a patient-based context, and somebody skilled in the medical record arts would know that because the patient's in control, the doctor, the hospital, or other medical institution is not. So we haven't disclaimed anything broader because that hasn't been something that has come up or that we've thought necessary. Okay, let's hear from you. Let me ask you, what is the difference between the two cases that are before us? Your Honor, they're very similar. The claims in 1482 are slightly more complex than the claims in 1581, and there are variations in the claims. The specification is identical, and the failure of the examiner and the board to perform the required functional analysis demanded by Graham and KSR is also identical. Okay. Let's hear from the office as to this case. Thank you, Your Honor. Thank you. May it please the Court of Appeal? Mr. LaMarca. I'd just like to address a couple of points made by Appellant right off the bat here. First of all, as Judge Rader pointed out, Snowden disclosed a patient-based medical record system, and Snowden specifically states that it's patient-based because the patient has ownership and control over the record. However, Appellant stated that he believes that that's distinguishable because in Snowden, the patient would somehow have the power to alter those records or cut against the accuracy of those records at some point because he controls it. Well, that is not what Snowden teaches. In fact, Snowden expressly states that physicians and other care providers were often resistant to utilize patient-based systems regarding accuracy and currency of the record, and as a result, Snowden achieved patient control while maintaining accuracy and control of the record. So Snowden doesn't teach that the patient can go in and alter the important medical information in the record. So just to diffuse that. There's a little bit of confusion in the Board's construction of patient-based, is there not? I mean, they seem to be talking about it created by the patient, and here, at least in the application, the patient is custodian but not the creator of the records, right? Yes, Your Honor. If you go to the Board decision, I think the Board points out that the reason Snowden is viewed as patient-based is because Snowden allows for ownership and control of the record. There is no articulation in the Board decision that says it's simply because the patient created it. In fact, the patient doesn't create a medical diagnosis. But the patient doesn't control in the application. The patient does not control the content of the records, right? That control is exercised by the medical professional. I understand, and equally in Snowden, the patient doesn't control the medical diagnosis of the doctor that goes into that record. In Snowden, a doctor would still perform an examination. In Snowden, a doctor would still document what that temperature and critical, vital aspects of the patient's examination, and that would go into the record, and the patient wouldn't have the power to alter that in Snowden either. So equally, just as in Snowden, as in the application, the patient doesn't really have the power to alter the medical information in the record. What the patient does have in Snowden is the power to determine who gets access to that record. For example, the patient gets an examination by Dr. A at Hospital A. That documentation goes into the record. Then another doctor in another part of the country wants to have access to that record. The patient can give that second doctor permission to access it. So in that sense, the patient controls the record in Snowden, but Snowden, the patient in Snowden, never has the power to go in and alter the examination that took place, those statistics. Like, for example, the patient's temperature was 98 degrees. The patient can't go in and change that in Snowden. What the patient can do is give Dr. B permission to go in and look at what Dr. A put into the record. So in that sense, Snowden has ownership and control of the record for portability. And if you read, I mean, Snowden expressly states that they are very concerned in Snowden about credibility and accuracy of the information, and therefore they have, even in Snowden, there are protections and mechanisms to protect against altering the record. Well, but you still have to deal with non-repudiation. That's correct. That becomes the key. And when everyone agrees, the government doesn't dispute that that part's not in Snowden. That part comes from Shepherd. As you pointed out, Shepherd teaches, once again, medical documentation system, which can be manual, which can be computer-based, which can be a combination of manual and computer. And in Shepherd, what happens is a patient goes in, gets an examination by a doctor or a health care provider. While that examination takes place, another party can be in the room, which they call a transcriber or a writer, that helps record down what the doctor is observing. And then he checks that it's correct later on. And then he checks it later. I understand that. Why is that the claimed invention? And if you look at the claim, the claim 1, Representative Claim 1 in the 1482 appeal, which is what we have here in front of us, non-repudiation, such that medical information contained within said medical records is verified as to accuracy and certified for accuracy. So all the claim requires here is that, A, it's verified for accuracy and B, certified. And if it has those two things, it acquires the non-repudiation factor or feature. Well, but Mr. Marks tells us this carries with it, because of the rest of the patent, a consistency when you have a plurality of records coming from a plurality of sources and that that's the kind of accuracy and certification he's looking for to eliminate inconsistencies. Nevertheless, Your Honor, what this claim requires in light of this specification that's been presented before the Patent Office and now before this Court is that step 1, it must be verified for accuracy. And what do we have that here? Yes, we have a record that gets put into a computer or medical documentation record in the Shepherd. Somebody checks it and verifies that it's accurate information. And subsequent to that, the health care professional reviews it and verifies it. And then once he reviews it and says, yes, it's been verified, yes, it's been corrected, he initials off on it, and the initials then are an indication by that health care provider that is certifying that that record is accurate and complete. And before any report can go out, before it can be transmitted, before it can be put into this medical documentation system, all that happens. And that's what this claim requires, and that's what the specification interprets those terms as. Now, all this discussion about vetting and additional steps of guarantees and warranties, none of that is in this claim. But it is in other claims. Claim 20 is specific to vetting, for instance. Yes, Your Honor. Yes, that's true, Your Honor. However, I would like to point out, and the Board did address Claim 20 in the Board decision and found that in this case, the vetting was found because here, the vetting was interpreted as not only going through and checking it, but if there's an error, making a correction to that error, and that the record is, quote, good as or better than the original. And the Board made findings that these prior references show that feature. However, I'd like to point out, if you look at the blue brief, if you look at the reply brief, you'll see that all that's been argued here is Claim 1, and everything's rising and falling with Claim 1 in this case. So really, our arguments are focused on Claim 1. And I don't think there's any dispute about these other claims really aren't at issue here for this court. What this court is focused on is Claim 1, which is what I've centered my arguments upon. In fact, you can look at the reply brief, and the reply brief of appellant says, you're correct, Government, we haven't argued any of the other features in any of their claims. Claim 1 is what's being argued. Claim 1 is what's at issue in this appeal. And Claim 1 requires verification, certification, and therefore non-repudiation. And that was all found by the Board, and they pointed to evidence in the record. And our position is that substantial evidence does support the Board's finding, and therefore the Government should be affirmed of this. Only one final point that I'd like to make, that the appellant repeatedly keeps saying that the examiner failed to follow the proper test of obviousness, and he brings up long-felt need. He brings up issues of secondary considerations. And we pointed this out in our brief that the standard test of obviousness, we believe, is well settled. KSR, Grant v. John Deere articulate the steps of going through an obviousness analysis, which is finding the prior art, finding the prior art that comes from the proper field, combining the prior art, and showing why they would be combined. All of that was here. Only then, after all that's happened, would the appellant then try to bring in secondary considerations to try to rebut that case. It's not in KSR. KSR says that the Graham factors continue to apply. It didn't draw a distinction as to when in the analysis the various factors are applied. Nevertheless, Your Honor, what I wanted to point out. Not nevertheless. You just argued something quite different. However, if you look at the record before the agency, Your Honor, there were never any declarations of secondary considerations, never any argument of secondary evidence, for example, long-felt need. Long-felt need came up in the briefs as argument. That's not secondary evidence of non-obviousness submitted before the agency. That doesn't exist in this case. That's different from what you just told us. Well, thank you for straightening me out, Your Honor. I'm glad I had the opportunity to clarify it. Well, but there's another point here that's important. Mr. Marks asserts, and it is part of his brief prominently, that no person of skill in this art would combine the Snowden patient-based system with the Shepard medical record verifying within the medical community. He's saying there's no motivation to combine those. Well, as the examiner and the Board pointed out, their determination of why there's motivation to combine is accuracy, correctness, making sure the medical records have precision. All of that is not only taught by Shepard, by Snowden. They both want accuracy and correctness. They both look for ways to increase and enhance the accuracy of these records so they can be relied upon. In fact, why else would Shepard and Snowden have— Yes, everyone wants accurate records. I don't think that is enough to say, though, that a doctor-based system is going to be seen as applicable in a patient-based system. As a matter of fact, the patient-based system inherently suggests that it's going to be modifiable by patients and therefore unreliable. Well, with all due respect, Your Honor, although that may seem like that's an implication when you read the reference, in particular the Snowden reference, it doesn't say that. Snowden, and I can agree to you, specifically says, Snowden was concerned physicians and other care providers are often resistant to utilize these types of patient-based systems, and the reason they're resistant is their concerns regarding accuracy and currency of the information as well as potential for increased litigation. They're concerned about potentially being altered, which meant Snowden sought to jump over that hurdle. We want to have a patient-based system, but at the same time, we want to be assured that it's accurate and secure and it's not being altered. They were concerned about that exact point, and they addressed it. So I think the implication that you suggested, if we didn't have any of these references in front of us, that sounds logical, but when you read these references, they say, we want to make sure the records that are built here, whether it's patient-based or institution-based, we want to make sure we can trust them. That's really what they're concerned about, and I think that is the crux of Appellant's argument, that he feels because Snowden's patient-based, this concern over trust isn't there, and it is there. It's right in the reference. So I think that's our response to that point, Your Honor. If there's nothing further, if there's no further questions, I'll take my seat. Okay. Thank you, Mr. DeMarco. Mr. Marks. If what Shepard created was sufficient to assure doctors and hospitals that a patient-controlled medical record was reliable, we'd have a wonderful health care system because everybody would have a personal health record. The doctor control that is the heart of Shepard doesn't work when the record is under the dominion of a patient. That's an important functional requirement, and it is at the heart of this long unmet need that the secondary consideration, and it works into the Graham and KSR test. When that test is applied, there is no way that a person skilled in medical records would combine Shepard and Snowden because they know that the two just don't fit. The functions don't happen. The quality control isn't there because the patient controls the record and the doctor doesn't. What about the point that you have limited your appeal essentially to claim one which doesn't contain some of the additional limitations which might be more related to the distinctions you're now drawing? We haven't limited our appeal to claim one, Your Honor. I know that the Board restricted its analysis, truncated its analysis, and that's... I didn't say limited the appeal, but limited the argument. If you're arguing that you've argued the breadth of claim one... Well, we've argued the breadth of claim one, but if you look at our briefs, we also argue other claims, too, and we cite other claims, so it's just inaccurate to say that we've limited our appeal to claim one because we haven't, and one can go through the briefs and find references to an analysis of other claims, so it's just flat wrong. What I want to point out with regard to the point Mr. Lamarck made about Snowden is this. Snowden may have seen the problem of the lack of reliability that doctors have with records, patients, control, but it didn't solve it. No, but it's at least suggesting that one of skill in the art would then combine it with Shepard to solve the problem. Well, but, Your Honor, if you combine... Because they're seeing the problems, and then, of course, that suggests one of skill in the art would be directed to solve that problem and find Shepard. But Shepard doesn't solve it. That's the point. Shepard is a doctor's, in fact, a source doctor's, looking at the record that the source doctor created, and when the record goes out of the doctor's hands, away from the institution, then none of the functionality in Shepard helps. Anyone in the medical record arts would know that. That's why the problem has persisted, and that's why you see these letters from Dr. Symbourg saying, you know, personal health records are or would be really important, but nobody has been able to convince doctors to use them because they're not reliable. As I said a moment ago, if the Shepard functions worked in a patient-based as opposed to an institution-based environment, we'd have a wonderful world of personal health records. In fact, Your Honor, this goes to the very definitional issue of what a patient-based record is. If the examiner and the supervisor and the juror are allowed to read patient-based out of the claims, give it no weight, not read the claims in terms of, in the context of the specification, but to read the claims rather in the context of the prior art, well, then we have a violation of Graham and KSR, and we have a completely unreal analysis that doesn't satisfy the substantial evidence test because you have to see that if the doctor no longer has control of a patient-based record, then, in fact, to claim that the institutional record quality control measures that are designed to deal with keeping the information reliable won't work here. The two can't be combined. They don't work. Patient-based is a real distinction. I think my time is up. Okay. Thank you, Mr. Marks. And, Mr. LaMarca, this case, number 09-1482, is taken under submission.